FRANK H. COONEY, and HOWARD COONEY, Partners, Doing Business as COONEY BROTHERS, Respondents, v. A. C. McKINNEY, Appellant.

No. 1401.  (71 Pac. 485.)

1. Contracts: Mailing Letter: Presumption of Receipt.

Where, in an action on a contract made by correspondence, plaintiffs offered in evidence the letter containing the terms of the contract, with proof that they wrote and properly addressed it to defendant, and mailed it in the United States postoffice, postage prepaid, and afterwards received it from defendant's attorney, and its receipt by defendant was not denied, the proof of the receipt was sufficient to admit it in evidence.[1]

[1] Brown v. Association, 18 Utah 276, 55 Pac. 65.

**2. Same: Breach: Departure by Plaintiff: Defendant Released from Performance.**

Defendant contracted to furnish plaintiffs with 5,000 cases tomatoes, at $1.30 per case net, less cash discount. Thereafter plaintiffs ordered defendant to ship 500 cases to a certain customer, at $1.30 per case, and to allow two per cent off for cash, and to charge one-half per cent to plaintiffs. Thereafter they wrote that they were advised by such customer that he was in receipt of notice from defendant that he would ship the tomatoes at $1.30 per case net, and that such was the contract with plaintiffs. Plaintiffs then stated that the contract was $1.30 per case, with one and one-half per cent off for cash, and demanded that shipments be made as ordered, adding, "Before we are through with you, you will wish you had tried to do what was right." Plaintiffs also ordered defendant to ship to a certain customer certain cases which would be delivered to defendant by another party, and also 300 cases at the price plaintiffs had sold to the customer, and when he paid to remit plaintiffs' share to them. *Held*, that these demands, coupled with the threat, were so different from the contract that defendant was released from performance.

(Decided February 5, 1903.)

Appeal from the Second District Court, Weber County.— *Hon. Henry H. Rolapp,* Judge.

Action for damages for an alleged breach of contract. From a judgment in favor of the plaintiffs, the defendant appealed.

REVERSED.

*T. D. Johnson, Esq.,* for appellant.

When one party to an executory contract, by his conduct manifests a deliberate intention to violate it in all its material conditions, the other party is absolved and released from further obligation to perform, and no suit for damages in such case, can or should be permitted, to succeed. Tiedeman on Sales, secs. 94, 95, 96; 21 Enc. Law (1 Ed.), p. 56

et seq., and cases cited; Id., p. 545, and cases cited; Werington v. Wright, 115 U. S. 188; Gardner v. Clark, 21 N. Y. App. 399; 3 Am. and Eng. Enc. Law (1 Ed.), 914, and cases cited.

*W. L. Maginnis, Esq.,* for respondents.

BOOTH, District Judge.—This is a suit for damages for an alleged breach of contract. The complaint alleges, in substance, that the plaintiffs are partners doing business in the name of Cooney Bros. That in June, 1898, at Ogden, Utah, the plaintiffs and defendant entered into an agreement whereby the plaintiffs agreed to buy, and the defendant agreed to sell, 5,000 cases of canned tomatoes, at the price of $1.30 per case, the defendant to put the same on board the cars at Ogden, f. o. b., during the months of September and October, 1898; that plaintiffs have at all times been ready and willing to perform their part of the contract, and that the defendant has neglected and refused, although requested, to fulfill his part, to the damage of the plaintiffs in the sum of $5,400. A demurrer to the complaint was interposed and overruled. No exception seems to have been taken, nor is it relied upon in this appeal. The defendant answered by a general denial. The case was tried before a jury, the verdict of which was for the plaintiffs for $840. The defendant offered no testimony. The defendant moved for a new trial, which on being denied, the defendant prosecuted this appeal.

The first assigned error relied on by the defendant is the admission of a letter written by the plaintiffs and produced by them, objected to by the defendant on the grounds that it was incompetent, irrelevant, and immaterial, and coming from the plaintiffs' possession without explanation. The following is a copy of the letter: "Butte, Montana, June 1, 1898. A. C. McKinney, Ogden, Utah—Dear Sir: We understand others are offering your

goods for sale in this State. It was our understanding that we were to have the exclusive sale of your goods in Montana, and if you want us to sell you will have to notify Mr. Murphy that you withdraw your prices. We will offer you $1.30 per case for 5,000 cases, to be shipped as soon as packed. This will be net to you, less the usual cash discount. We cannot do any better than this, as others are offering goods at $1.67, f. o. b. Butte, in 100 case lots. This would be $1.35 there, and we must have something for our trouble and traveling expenses. What is more, your goods were not in it with other goods packed in Utah last year. You will have to put a more solid pack this season. Please let us know if you could not put up a 3-pound can, a much better tomato than the other, and pay more for them. How about gallon goods? Yours truly, Cooney Bros. By F. H. Cooney." The testimony shows that the plaintiffs wrote the letter, properly addressed it, mailed it in the United States postoffice, postage prepaid, and afterwards obtained it from the defendant's attorney, where it had been used in court at Butte, Mont. It is nowhere denied in the testimony that the defendant received the letter.

In the case of Brown v. Association, 18 Utah 265, 276, 55 Pac. 65, Bartch, J., says: "In case of negotiable bills and notes, notice of dishonor for non-payment, where the parties live in different places, is usually sent by mail, and the law is well settled that the fact that the sender duly delivered it, properly addressed, with postage prepaid, in the postoffice, raises a conclusive legal presumption that the notice was received. So strongly recognized by law is this usage, in commercial transactions and relations, that if such notice be sent by messenger, when it might be sent by mail, it must be delivered in the same time that the mail would carry it. . . . Thus the legal presumption and usage have grown out of convenience and necessity, and have settled into positive law; . . . where notice is properly sent by mail, it raises at least a prima facie presumption that

the notice was received. . . . In the case of an insurance policy, like the one in question, therefore, this presumption so arising, while not conclusive of the fact that the notice was received, is an inference of fact, founded on the usual course of business, and the probability that the officers of the postal system will do their duty, and is prima facie evidence of service."

Other assignments of error are urged to the introduction of other letters, but we think they are either without merit, under our view of the correct ruling of the court in the introduction of the letter above set out, or were not prejudicial to the defendant. And the testimony fully warrants the conclusion that the contract was entered into between the parties to this suit.

Another, and we think a more serious, cause of complaint which the defendant sets out is based on the refusal of the trial court to grant a nonsuit as to two cars of tomatoes, and the refusal of the court to peremptorily instruct the jury to find a verdict for the defendant, "No cause of action." The following letters were admitted in evidence over the objection of the defendant, marked, respectively, "F," "G," and "H," from the plaintiffs to the defendant:

"Dear Sir: Ship at once five hundred cases of two and a half pound tomatoes to Union Mercantile Company, Helena, Mont., and allow them two per cent. off the net amount for cash, and charge us with one-half per cent., as all canned goods are billed sixty days. We think the action you have taken with the above-named company was done with a view to give us another deal. Now, we want a fair deal from you and expect same from you. If the said company was poorly rated or unworthy of credit, we could understand your attitude in the matter. Yours truly."

"Dear Sir: We are in receipt of a letter from the Union Mercantile Company, stating that you will ship them at $1.30 per case, net cash, saying that this was our agreement with you. Our agreement with you was $1.30, less

one and a half per cent. for cash. You will please bill no more goods like this. Bill them at price we sold at, and remit us the difference. We cannot understand what you mean by your action in this matter, and before we are through with you, you will wish you had tried to do what was right."

"Dear Sir: Craig Bros. will deliver to you 50 cases three's, and fifty cases gallons. You will please ship these with 300 cases to Brophy. You will bill the two and a half to Brophy at the price we sold him, and when he pays you send our share to us. We have sold 2,700 cases, that we have not orders in for, to the Davidson Grocery Company."

We hold that the demands contained in these letters, coupled with the threat, were so materially different from the contract that the defendant was justified in refusing to comply with them, and that the plaintiffs could not so vary from their offer contained in their first letter as the demands in the others indicate, and still hold the defendant to his part.

The case is reversed, with costs, and the district court is ordered to grant a new trial.

BASKIN, C. J., and BARTCH, J., concur.