On August 29, 1929, the Continental Illinois Bank and Trust Company of Chicago sent $21,974 in currency by registered mail from Chicago, Illinois, to the Franklin County Coal Company at Royalton, Illinois. The parcel was transported over the defendant's line of railroad from Chicago by way of Carbondale, where it was transferred to a train running between Pinckneyville and Eldorado. From this train it was transferred at Christopher to another train running between that city and Royalton. There was but one train a day between Christopher and Royalton, and on that run there was no railway mail car nor any railway mail clerk. The mail service was what is called "closed-pouch service," the mail sacks being stacked in the baggage car and handled by the trainmen, none of whom had taken any government oath as prescribed by the postal laws to be taken by persons in the regular employ of the postal department. At some point between Christopher *Page 305 
and Royalton the pouch containing the currency shipment was stolen, and it is for the loss of that package and the value thereof that this litigation was commenced in the form of an action on the case. The plaintiff had insured the bank against loss in the shipment, had paid the loss to the bank, taken an assignment, and brought this action as an assignee.
The declaration consisted of three counts, charging negligence of the defendant in the handling of the mail, in the supervision and superintendence of its servants, and negligence in the selection of the servants. The defendant pleaded the general issue and filed four special pleas. The first denied that the defendant handled or transported the mail in question but alleged that it was being transported by the United States government post-office department. The second denied that the persons in charge of the mail, and on whose negligence the claim is predicated, were the servants of the defendant, but alleged that they were servants and employees of the United States government. The third set up the provisions of the act of Congress as to the liability of contractors for the loss of mail. The fourth alleged the monopoly by the government in the carriage of mail, and that Congress having specifically legislated on the subject within its exclusive jurisdiction, such enactments of legislation fixed the liability of mail contractors for the loss of mail, superseded any common law or other basis of liability, and that the remedy and procedure designated by Congress became and were the only remedy for any person suffering any loss. Trial in the circuit court resulted in a finding and judgment for the plaintiff in the full amount of the value of the currency. On appeal to the Appellate Court for the First District that judgment has been affirmed. (283 Ill. App. 527.) The cause is before us for further review upon leave granted.
Except that we can find no evidence of any negligence on the part of the defendant in selecting the servants in *Page 306 
charge of its train between Christopher and Royalton, we find the statement of facts by the Appellate Court to be substantially correct and it need not be fully repeated here. The view which we take of the case requires the examination of but one point, and for the consideration of that question no further statement of the facts or detailed testimony of the witnesses is required.
Plaintiff bases its right to recover upon a theory of negligence disassociated from any contractual relation, and in its brief it states what we believe to be a true rule of law, omitting, however, the words in parenthesis: "The true question in any case involving tort liability is, Has the defendant committed a breach of duty apart from the contract? If he has only committed a breach of contract he is liable to those only with whom he has contracted; but if he has committed a breach of duty (apart from the contract) he is not protected by setting up a contract in respect of the same matter with another person." This rule is in accord with our holdings, and although there are numerous exceptions to it they need not be noted here. Liabilityex delicto grows out of a want of ordinary care and skill in respect to a person to whom the defendant is under an obligation or duty to use ordinary care and skill. (Gibson v. Leonard,143 Ill. 182.) While this duty may exist independent of any contract, where it is dependent on a contractual relation some privity must exist between the one inflicting the injury and the plaintiff.National Iron and Steel Co. v. Hunt, 312 Ill. 245, 143 N.E. 833, 34 A.L.R. 63.
In the case last cited the defendant was engaged in the business of inspecting materials and was employed by the H.M. Foster Company to inspect a lot of rails which had been purchased subject to such inspection. Hunt Co. reported to the Foster Company with a certificate of inspection, which was later relied upon by the National Iron and Steel Company. In an action on the case the steel *Page 307 
company recovered from Hunt Co. on a theory of negligence in the inspection which had been made for the Foster Company. In the opinion we said: "For an injury arising from mere negligence, however gross, there must exist between the party inflicting the injury and the one injured some privity, by contract or otherwise, by reason of which the former owes some legal duty to the latter. With respect to the inspection made in April for the H.M. Foster Company, there were no contractual relations between defendant in error and plaintiff in error. It was more than a month after this contract for inspection was completed before defendant in error entered into negotiation with the Foster Company for the re-laying rails in question. Before defendant in error purchased these rails it did not request or receive a report from plaintiffs in error, but it apparently acted upon the report made by plaintiffs in error to the Foster Company in April. Plaintiffs in error owed no duty to defendant in error at the time this report was made nor at the time it acted upon the report. Their contract was with the Foster Company, and their undertakings were necessarily subject to modifications and waiver by the contracting parties. If defendant in error or other third persons can acquire a right in this contract the contracting parties are deprived of control over their own contract. The fact that plaintiffs in error held themselves out as expert inspectors, and the fact that business men relied upon their reports in purchasing materials, do not change the rule. They only assumed the duties and obligations of experts when they were employed to render expert services, and their obligations in that regard extended only to persons who bought and paid for their services." In that opinion we reviewed a number of cases which sustained the foregoing rule and arrived at a judgment of reversal. The case will be found reported in 34 A.L.R. 63, where it is followed by an annotation showing the rule to have been applied in the Federal courts and *Page 308 
the courts of fourteen States and in England. We believe it to be the true rule, subject to exceptions which are not here material.
The above rule seems to be traceable to Winterbottom v. Wright, 10 Mees. W. 109, 152 Eng. reprint, 402. In that case the defendant had contracted with the Postmaster-General to keep certain mail coaches in repair, and, by reason of his failure to do so, a third person not a party to the contract had been injured and brought an action on the case. Lord Abinger said: "I am clearly of the opinion that the defendant is entitled to our judgment. We ought not to permit a doubt to rest upon this subject, for our doing so might be the means of letting in upon us an infinity of actions. * * * It is * * * contended that, this contract being made on behalf of the public by the Postmaster-General, no action could be maintained against him, and therefore the plaintiff must have a remedy against the defendant. But that is by no means a necessary consequence — he may be remediless altogether. There is no privity of contract between these parties; and if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue. Where a party becomes responsible to the public, by undertaking a public duty, he is liable, though the injury may have arisen from the negligence of his servant or agent. So, in cases of public nuisances, whether the act was done by the party as a servant, or in any other capacity, you are liable to an action at the suit of any person who suffers. Those, however, are cases where the real ground of the liability is the public duty, or the commission of the public nuisance. There is also a class of cases in which the law permits a contract to be turned into *Page 309 
a tort; but unless there has been some public duty undertaken, or public nuisance committed, they are all cases in which an action might have been maintained upon the contract. Thus, a carrier may be sued either in assumpsit or case; but there is no instance in which a party, who was not privy to the contract entered into with him, can maintain any such action. The plaintiff in this case could not have brought an action on the contract; if he could have done so, what would have been his situation, supposing the Postmaster-General had released the defendant? That would, at all events, have defeated his claim altogether. By permitting this action, we should be working this injustice, that after the defendant had done everything to the satisfaction of his employer and after all matters between them had been adjusted, and all accounts settled on the footing of their contract, we should subject them to be ripped open by this action of tort being brought against him."
The Winterbottom case has been much quoted and generally followed. Thus, in 1905, in the English case of Earl v. Lubbock, 1 K.B. 253, 6 B.R.C. 242, the cause of action was based upon alleged negligence of workmen in failing properly to inspect and repair a defective van, and it was said: "The argument of counsel for the plaintiff was that the defendant's servants had been negligent in the performance of the contract with the owners of the van, and that it followed, as a matter of law, that anyone in their employment, or, indeed, anyone else who sustained an injury traceable to that negligence, had a cause of action against the defendant. It is impossible to accept such a wide proposition, and, indeed, it is difficult to see how, if it were the law, trade could be carried on. No prudent man would contract to make or repair what the employer intended to permit others to use in the way of his trade."
In Boston Ins. Co. v. Chicago, Rock Island and Pacific RailroadCo. 118 Iowa 423, 59 L.R.A. 796, suit was *Page 310 
brought to recover from the railroad company for the loss of a registered parcel of currency, alleged to have been caused by the negligence of defendant's employees. A demurrer to the petition was sustained and the judgment was affirmed by the Supreme Court of Iowa. In affirming the judgment the Iowa court pointed out that the duty involved was a duty to the government and that railroad companies in carrying the mails were agents of the government in the exercise of a public function; that neither the addressee nor the sender of a letter had any contract with the railroad company, nor was the letter delivered to nor to be received from that company; that from the beginning to the end of the transaction the mail was in government hands. The court said: "There is no privity whatever between the individual and the railway company in the carriage of mail, and, as the railway has no control thereof, and cannot direct as to how it shall be handled, while on the train, it would be most unjust to hold it responsible to the individual addressee. Manifestly, the railway is neither a common, nor a private, carrier for the individual. It neither receives nor undertakes to deliver any of the letters or packages carried over its line. They are received by the government or its agents which undertakes to deliver them at their destination. The railway company is not, as we understand it, a bailee in the ordinary sense. Neither the sender of the letter nor the government delivers mail to the railway company. It is at all times in charge of officers and agents of the government."
In Norfolk and Western Railway Co. v. Hall, 57 F.2d 1004, (4 C.C.A.) the plaintiff was a servant of the railroad company, and was injured, as he alleged, by reason of the negligence of other railroad servants in loading mail on a railroad mail car. It was held that the men who loaded the car, although employed and paid by the railroad company, were in that behalf lent servants of the post-office *Page 311 
department and that the railroad company was not liable.
In Denton v. Y. M.V. Railroad Co. 284 U.S. 305, a porter employed by the railroad company caused an injury to the plaintiff while loading mail into a United States mail car. It was held that the work being done was government work and that the railroad company was not liable.
The language used in Bankers Mutual Casualty Co. v. Minnesota,etc. Railroad Co. 117 Fed. 434, is to the same general effect, although the case is distinguishable from this one because of differences in the pleadings. In that case a mail sack was delivered to defendant's night agent. It was alleged that under postal regulation it was the defendant's duty to provide a safe place for the mail, to safely care for and guard it during the night, and also safely deliver it to the post-master in the morning. The negligence alleged consisted of a breach of these duties. The court pointed out that there was no allegation that it was required that the mail be put in a safe place in the depot or guarded by sufficient locks, as would be reasonable in such case. Although the turning point of the case appears to have been the insufficiency of the specific allegations of negligence the case contains the following language, which we find to be helpful and which we believe to state correct principles presently applicable: "It seems clear to us that defendant in error was a public agent of the United States in relation to carrying the mail, for the reason that the constitution of the United States conferred upon it the power to establish post-offices and post-roads, and this power was granted by the people as one of the sovereign powers, to be exercised by the general government exclusively. By virtue of this grant of power, the United States has always, through its post-office department, assumed the exclusive charge of the carriage and delivery of the mail for the benefit of all the people. In doing so the United States is beyond question engaged *Page 312 
in the discharge of a governmental function. All persons or corporations who are engaged in the carriage or delivery of the mail by the authority of the United States, conferred by contract or general laws, are but the instruments used by it to discharge this function."
We are of opinion that when a letter is mailed it is from then on in the exclusive control of the government; that its transportation, guarding and delivery are governmental functions, and that whoever performs those functions, whether carefully or otherwise, is in the service of the government. With some distinctions between land-grant roads and others, the railroads are required to receive all mailable matter in such containers as the government may provide or prescribe and to handle and transport it in accord with contracts the terms of which are prescribed by law and as directed by Federal statute and general orders of the Postmaster-General. These contracts between the post-office department and the railroads impose duties the breach of which may give rise to liabilities, either ex contractu or exdelicto, but no individual member of the public is a party to such contract nor was any such contract made for his benefit. Presumably the government prescribes rules which will reasonably safeguard valuable mail, but as a sovereign the United States government need not do so but may handle the matter in such way as it sees fit. If any such rule of accountability as is here contended for is to be enforced, justice would require some notice to the railroad as to the value of the parcels being handled. One mail sack may be so valueless as to require no guarding at all, while another, indistinguishable from it, might need a company of soldiers. The value of the contents of an ordinary-looking mail pouch might even equal the full capital of the railroad required by law to handle it, yet under the rule sought to be enforced that capital might be wiped out through the negligence of a servant with no knowledge on the part of *Page 313 
the railroad that it had assumed any such extreme hazard and with no reasonable opportunity to take precautions commensurate with the burden imposed. Such a rule would be entirely unreasonable if enforced without previous notice, and if enforced after due notice to the carriers it would unreasonably burden the public through a necessarily sharp increase in rates for transporting the mail. One desiring to transport a valuable parcel may choose his own means. He may use a special messenger or ship by freight, express or by mail. If he chooses to commit his errand to the government he becomes bound by the government's selection of agents and contracts with the forwarding companies, and he cannot go back of those contracts to have recourse against such agencies as the government has seen fit to employ.
For the reasons indicated, the judgments of the Appellate Court and circuit court will be reversed.
Judgments reversed.