No. 39,228

ANNA C. ANDERSON and JO ANN BREWER, *Appellants,* v. L. W. REX-ROAD and J. M. REXROAD, a Co-Partnership doing business as L. W. REXROAD AND SON, *Appellees.*

(266 P. 2d 320)

Opinion filed January 23, 1954.

*Drew Hartnett,* of Salina, argued the cause, and *L. O. Bengtson,* of Salina, was with him on the briefs for the appellants.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark* and *Tom Lillard, Jr.,* both of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: The plaintiffs brought this action as third party donee beneficiaries upon a contractual obligation alleged to have been assumed by the defendants under the terms of a contract with the City of Assaria, Kansas, wherein the defendants undertook the construction of certain street improvements, during the performance of which plaintiffs' house and personal property were totally consumed by fire. Following the overruling of motions to make more definite and certain and to strike the trial court sustained the defendants' demurrer to the petition on the ground such pleading failed to state facts sufficient to constitute a cause of action. The plaintiffs appeal from the ruling on the demurrer.

Preliminary allegations, appearing in the first five paragraphs of the petition, are of little import and need not be detailed. Stated in summary fashion they recite that on all dates in question plaintiffs, Anna C. Anderson and Jo Ann Brewer, were the owners, in undivided interests, of a five-room frame dwelling, in which were household and personal effects, located on certain lots in Assaria,

Kansas, a city of the third class; that the defendants, L. W. Rexroad and J. M. Rexroad, were partners doing business as L. W. Rexroad and Son; and that Harry Miller was one of their employees.

Paragraphs 5, 6, 7 and 8 of the petition are vital to the issues and should be stated at length. They read:

"That on or about the 31st day of August, 1951, the City of Assaria, Kansas, by Oscar Almquist, its duly elected, qualified and acting mayor, being first duly authorized, entered into a written contract for the benefit of the residents and property owners of said City, with the defendants herein, for street improvements to be made within said City, a copy of said contract is marked Exhibit 'A', attached hereto and made a part hereof by reference, with like effect as if set forth herein in full.

"That under Article V of the signed contract it was agreed between the parties that any reference made to the contract would include all contract documents as specifically set out in the 'General Clauses' and that the same were made a part of the signed contract to the same extent and with like effect as if set out at length therein.

"That under Paragraph (t) (Property Damage) of Section 10 (Responsibilities of the Contractor), in the 'General Clauses' of the aforesaid contract, the defendants agreed that they would be liable for all damages to buildings, structures, trees, shrubbery or other property, located outside of the construction limits as provided in said contract, or located within those limits but not designated for removal and in the event of their damage or destruction, defendants would at their own expense repair, replace, reconstruct such property or otherwise make amicable settlement of such damage claims within thirty (30) days after a claim was filed, and further providing that in case the defendants failed or refused to make such settlement within such period, or in case the terms of such settlement could not be agreed upon, the question of damages and the amount thereof was to be submitted to arbitration as provided in Section 9 of the 'General Clauses' of the aforesaid contract; that the aforesaid City of Assaria, Kansas, was under a legal obligation and duty to protect and safeguard the property and lives of its residents and the property of non-resident owners and contracted with the above-named defendants to assume this liability while the aforesaid contract was being performed by said defendants; that it was the intention of the defendants and the City of Assaria, Kansas, that the foregoing provisions in said contract set forth in this paragraph be and were made for the benefit and protection of that class of persons of which plaintiffs are members.

"That on or about the 2nd day of February, 1952, one Harry Miller, an employee of the defendants, was engaged in the performance of the defendants' aforesaid contract with the City of Assaria, Kansas, and was operating what is commonly known as a 'bulldozer' in either stripping, grading or excavating the street, the exact type of work being well known to defendants but unknown to plaintiffs, on Railroad Avenue between First and Second Streets in the City of Assaria, Kansas; that in the course of and as a result of the said operation conducted by the said Harry Miller a natural gas line was severed and gas was permitted to escape and ignite, resulting in the burning and complete

destruction of the plaintiffs' dwelling and the contents therein, the description of which is hereinbefore described, resulting in the aforesaid loss to plaintiffs; that said fire and resultant loss to plaintiffs was occasioned by the direct and proximate acts of the defendants' servant, Harry Miller, in the performance of the aforesaid contract."

The next four paragraphs and the prayer of such pleading, like the preliminary portions thereof, are of little consequence. Summarized, they contain allegations to the effect plaintiffs complied with all requirements of the contract prior to the bringing of the action, including the making of a claim for the loss sustained by them, followed by a demand for arbitration, each of which was denied and refused by defendants; recitals respecting the fair and reasonable replacement value of the property destroyed by the fire and its rental value since the date thereof; and a request for judgment accordingly.

At the outset it may be stated that, although appellees have taken no appeal from the rulings on their motions to make more definite and certain and to strike, we have examined the petition and concluded the trial court properly overruled the motion to make that pleading more definite and certain. Therefore, based on what has been heretofore related, and we may add on the basis of arguments advanced by the parties in support of their respective positions, it becomes clear the over-all question involved on appellate review is whether the allegations of the petition, accepted as true and given the benefit of all reasonable inferences, are sufficient to permit a recovery under the terms of the contract between the City of Assaria and the appellees for the loss claimed to have been sustained by the appellants.

In a general way it may be said that appellants contend they are donee beneficiaries of the contract entered into between the City and the appellees for their benefit and that as a matter of law they can maintain an action and recover for their loss under the terms of such contract as against the contractor appellees. On the other hand the appellees, who claim to the contrary, advance three specific contentions as grounds for sustaining their position and the ruling of the trial court on the demurrer. Because it seems feasible to dispose of the appeal on the basis of such contentions we shall proceed to give them consideration as we deem advisable without regard to the order in which they are presented.

The first of the contentions to which we have just referred requires an interpretation of Section 10 (t) of the contract. This

section is referred to at length in one of the heretofore quoted paragraphs of the opinion but will be here quoted *in toto* for purposes of clarity and emphasis. It reads:

"t. *Property Damage. The Contractor shall be liable for all damages to buildings,* structures, trees, shrubbery, *or other property* located outside the construction limits, or located within those limits but not designated for removal and not interfering with construction of the proposed improvements. *The Contractor, at his expense, shall repair, replace or reconstruct such property or otherwise make amicable settlement of such damage* claims within 30 days after the claim is filed. In case the Contractor fails or refuses to make settlement within such period, or in case the terms of settlement cannot be agreed upon, the question of damages and the amount thereof shall be submitted to arbitration."

The gist of all arguments made by appellees on the point now under consideration is that the language of the foregoing section of the contract when considered in the light of all its other sections must be considered as comprehending less liability than its terms import. The established rule is that the intention of the parties and the meaning of a contract are to be deduced from the instrument where its terms are plain and unambiguous; that when the language is clear and unequivocal the meaning must be determined by its contents alone; that words cannot be read into a contract which import an intent wholly unexpressed when it was executed; and that the court may not make an agreement for the parties which they did not make for themselves (See West's Kansas Digest, Contracts, § 143; Hatcher's Kansas Digest [Rev. Ed.], Contracts, § 40). When analyzed the terms of the quoted section of the contract, particularly those emphasized, are express, clear and unequivocal and we find nothing elsewhere in the contract conflicting therewith. It follows the language used in such section must be given its plain and ordinary meaning without resort to further rules of construction. When this is done we are forced to the conclusion it means exactly what it says, *i. e.,* that the contractor shall be liable for all damages to buildings or other property, at least such as were located in the City of Assaria, resulting from the work performed under the contract and that if this court were to hold otherwise it would be making an agreement for the parties which they did not make for themselves.

The basic premise on which appellees found their next contention is that the terms of the agreement disclose no such privity of contract between apppellees and appellants as will authorize the latter

to maintain an action as third party donee beneficiaries against appellees to recover for the destruction of the involved property.

In view of the limited scope of appellees' position under the foregoing contention there is no occasion to here write a thesis on the right of a third person to enforce a contract between other persons for his benefit. While it has not always been so the general rule, now well established in the United States, including our own jurisdiction, is that he may avail himself of such a contract when made for his benefit and maintain an action thereon notwithstanding he was a stranger thereto and paid no part of the consideration therefor or had no knowledge thereof and was not identified therein when it was made. For statements of the rule in other jurisdictions see 12 Am. Jur., Contracts, 825, § 277; 17 C. J. S., Contracts, 1121, § 519 (c); Restatement of Law, Contracts, §§ 133, 135, 139. For our latest decisions recognizing and applying such rule see *Holmes v. Kalbach,* 173 Kan. 736, 252 P. 2d 603; *In re Estate of Hilliard,* 172 Kan. 552, 241 P. 2d 729; *Cory v. Troth,* 170 Kan. 50, 223 P. 2d 1008. For many others see Hatcher's Kansas Digest, (Rev. Ed.), Contracts, § 98; West's Kansas Digest, Contracts, § 187.

The question of what constitutes privity of contract is all important in disposing of the second contention advanced by appellees. They place great weight on the early case of *Mott v. Water Co.,* 48 Kan. 12, 28 Pac. 989, wherein it was held:

"Where a city contracts with a water company to furnish a supply of water for use in extinguishing fires, such supply to be paid for by a levy of taxes upon the tax-payers of the city, and by the terms of the city ordinance, which the water company accepts, the water company agrees 'that it will pay all damages that may accrue to any citizen of the city by reason of a failure on the part of the company to supply a sufficient amount of water, or a failure to supply the same at the proper time, or by reason of any negligence of the water company,' there is no such privity of contract between a citizen or resident and the water company as will authorize him to maintain an action against it for the injury or destruction of his property by fire, caused by the failure of the water company to fulfill its contract." (Syl.)

In our opinion waterworks cases, such as the one from which we have just quoted, are in a class by themselves and are not decisive, as appellees contend, of the question of privity involved in the instant case. Even so it must be conceded the case on which appellees rely tends to support their position and should be considered.

The rule announced in *Mott v. Water Co., supra,* and other similar cases, where it is still adhered to, has been severely criticized. In fact it may be said the fallaciousness of the reasons assigned for the

pronouncement of such rule has been fully demonstrated (4 Corbin on Contracts, 204 to 211, incl. § 806; 1 Farnham, Waters and Water Rights, 848, § 160b; 62 A. L. R., Anno., 1212). Be that as it may there are other sound reasons for holding the rule in the Mott case, to the effect there was no such privity of contract between the parties as would authorize the plaintiff to maintain the action, is no longer to be regarded as sound and should be disapproved. In the years since its decision there has been steady progress on the part of the courts in the extension of the right of a third party to sue on a contract made for his benefit and it has been stated frequently that in the light of modern developments privity in the sense it was used prior to recognition of the present third party beneficiary doctrine is no longer necessary in order for the beneficiary to maintain an action or recover on a contract intended for his benefit.

See 12 Am. Jur., Contracts, 830, § 278, where the following statement appears:

"The basis of the rule permitting the beneficiary to sue has been stated to be that 'the law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded.' This theory is probably more frequently stated than any other. This, however, is merely an indirect way of saying that privity is not necessary to enable the beneficiary to recover. By saying that the law operating upon the acts of the parties 'establishes the privity,' the courts really mean that the law dispenses with the necessity of privity in the strict sense of the term."

See, also, 12 Am. Jur., Contracts, 835 to 838, incl., § 284, for further statements of like import. Also 81 A. L. R., Anno., 1289 where it is said "The very essence of the American rule is that such privity is not necessary."

In 4 Page On The Law Of Contracts, 4211, § 2388, it is said:

". . . Where the right of the beneficiary is recognized and the necessity of privity is still insisted upon, it is sometimes said that the law creates the privity between the parties. The right of the beneficiary to recover is also explained on the theory that the promisor is estopped to deny the privity between the promisor and the beneficiary, if it has received a consideration from the promisee. The explanation which meets the actual facts of the case is that if the contract is intended for the benefit of a third person, it is not necessary that there should be any privity between the beneficiary and the promisor."

For a similar statement see 2 Page Supp., On The Law Of Contracts, 1685, § 2388.

See, also, 4 Corbin On Contracts, 29, § 778, which states:

". . . In the light of modern development, it must be supposed that the

absence of 'privity' is not a sufficient reason for denying a remedy, inasmuch as C has been given one in thousands of cases without reference to 'privity.' The mystery of 'privity' remains; but it is no longer of much interest because court action is not much influenced by it."

Moreover in the light of the modern doctrine now prevailing with respect to the maintaining of actions on contract by third party beneficiaries, and independent of questions pertaining to the legality of the contract involved, the great weight of authority in the United States now holds that where an improvement, such as is here involved, is made under a contract between a municipality and the contractor making it, by which the contractor assumes liability for all damages to buildings or other property resulting from the work of constructing the improvement, such contract is to be regarded as for the benefit of an injured property owner who may maintain an action, and if the facts warrant recover, on such contract. See 10 McQuillin (3rd Ed.) Municipal Corporations, 503, 504, § 29.129; 13 McQuillin (3rd Ed.) Municipal Corporations, 629, 631 to 634, incl., §§ 37.231, 37.233; Restatement Of Law, Contracts, § 145; 4 Corbin On Contracts, 83, 201, §§ 782, 805; 63 C. J. S., Municipal Corporations, 994, 1025, §§ 1259 (d) (2), 1289; 38 Am. Jur., Municipal Corporations, 411, § 708; 43 Am. Jur., Public Works and Contracts, 825, § 82, and cases there cited.

It is interesting to note that as early as *Jenree v. Street Railway Co.*, 86 Kan. 479, 121 Pac. 510, this court recognized the modern trend, as well as the doctrine adhered to in the heretofore cited authorities, when at page 486 of the opinion it said:

". . . It may be observed, however, that the modern tendency *it* to hold that a contract made between a municipality and a public-service corporation inures directly to the benefit of the individual citizen in the very cases in which the city rests under no legal duty or liability respecting the subject of the contract. (*Ind. Dist. v. LeMars Light & Water Co.*, 131 Iowa 14, 107 N. W. 944; *Pond v. New Rochelle Water Co.*, 183 N. Y. 330, 76 N. E. 211.)"

After a review of the foregoing authorities, followed by a somewhat exhaustive examination of the numerous decisions cited supporting the rules therein announced, we have little difficulty in concluding the allegations of the instant petition were sufficient to withstand any claim made against it on the basis of lack of privity and that appellees' contention the demurrer was properly sustained upon that basis lacks merit and cannot be upheld.

In reaching the conclusion just announced we have disregarded, not overlooked, the numerous Kansas cases and decisions from

other jurisdictions, cited by appellees' astute and industrious counsel, holding that a municipality is not liable, in the absence of a statute imposing liability, for the wrongful acts of city officials or employees, performed in the exercise of governmental functions; also authorities holding that so long as an independent contractor is guilty of no negligence in his performance of municipal improvement work, he is entitled to share the immunity from liability possessed by the city. We have no quarrel with such decisions. The trouble with them from appellees' standpoint, as well as our own, is that they are of little value on the point just decided, particularly in a case where—as here—it appears from the face of the record that whatever immunity the contractor might otherwise have been entitled to had been contracted away under the terms of the agreement.

Finally appellees contend that with the construction we have given section 10 (t) of the contract such section is unenforceable and no action can be maintained thereon because it is unsupported by consideration and beyond the city's power to make.

There are two short and simple answers to arguments advanced respecting lack of consideration. In the first place, as was pointed out early in this opinion, the validity of a contract containing a clause providing benefits for a third person does not depend upon payment of consideration on the part of the third party. Indeed if that were the rule, we would have no third party donee beneficiary contracts. In the next place an examination of the instant contract discloses that it included all obligations imposed by its terms. Under such circumstances the total consideration agreed to be paid by the city was a consideration for everything agreed to by the appellees. (See *Barton v. Hackney,* 167 Kan. 754, 208 P. 2d 590.)

We are not too certain appellees' claim, the action of the city in entering into the contract requiring the contractors to indemnify property owners against risks for which the city would have no liability was ultra vires, is sound. Much that is said and held in *Robertson v. Labette County Comm'rs,* 122 Kan. 486, 252 Pac. 196; and *Robertson v. Labette County Comm'rs,* 124 Kan. 705, 261 Pac. 831, indicates that under the confronting facts and circumstances such action would not exceed the powers conferred upon it by law. Be that as it may, we are not confronted with or required to pass upon that question.

Assuming, but not deciding, the city's action was ultra vires

appellees' contention on this point cannot be upheld. Instruments attached to and made a part of the petition disclose the contract in question was executed on August 31, 1951; that it provided the work was to be completed within 140 days thereafter; and that the claim herein involved was made on August 15, 1952. We are told, and it is not denied, the contract was completely executed on the part of the signatories thereto some months prior to the commencement of this action. Without these undenied statements we would nevertheless be bound to assume that such was the case. In addition it must be conceded the action of the city was not expressly prohibited by statute and that the most that can be said, even from appellees' standpoint, is that it possessed only such powers as were conferred by law, and had acquired none by implication, on the date of the execution of the contract. Under such conditions and circumstances the rule is that it does not lie in the mouths of the appellees to raise the question of ultra vires in order to avoid liability under the contract. See 38 Am. Jur., Municipal Corporations, 183, § 507, where, in discussing the doctrine of ultra vires as applied to municipal corporations, it is said "However, an ultra vires contract which has been fully performed by both parties is no longer assailable by either party." See, also, 38 Am. Jur., Municipal Corporations, 191, § 514, which states:

"It has frequently been held that when a municipal corporation has entered into and performed a contract which, although ultra vires, was not prohibited by law, the other party to the contract cannot set up the plea of ultra vires to escape liability and to retain the benefits received under the contract. Having regarded the contract as valid for purposes of reaping its benefits, he will be deemed to be estopped to question its validity for the purposes of denying his liability thereunder. . . ."

In view of what has been heretofore said and held we are constrained to hold the allegations of the petition were sufficient to state a cause of action and that the trial court erred in sustaining the demurrer to such pleading. It follows its action in that respect should be vacated and set aside and the cause remanded with instructions to overrule the demurrer and proceed with the cause in accord with the views expressed in this opinion.

It is so ordered.