341 P.2d 944

**WALKER BANK & TRUST COMPANY, as Guardian of the Estates of Aurora Margarita Gallagher and Kelly Millicent Gallagher, Minors, Plaintiff and Respondent,**

v.

**FIRST SECURITY CORPORATION, a corporation, Defendant and Appellant.**

No. 8890.

Supreme Court of Utah.

Aug. 3, 1959.

Ray, Quinney & Nebeker, A. U. Miner, Salt Lake City, for appellant.

Gustin, Richards & Mattsson, Salt Lake City, for respondent.

CROCKETT, Chief Justice.

The Commercial Bank of Utah failed to pay premiums on an insurance policy upon the life of Nancy Gallagher in accordance with an authorization furnished it by her. The policy lapsed and after her death Walker Bank & Trust Company as guardian of her children, the beneficiaries, sued and recovered judgment for the amount of the policy. First Security Corporation, successor to Commercial Bank, appeals.

Nancy Gallagher, the insured, took out the policy with American Investors Life Insurance Company of Dallas, Texas, August 19, 1955. She signed a "Sight Draft Authorization," which requested and authorized the Commercial Bank at Spanish Fork, Utah, to charge her account with drafts to be drawn by the insurance company for the monthly premiums on the policy. The bank accepted the authorization and paid drafts for the months of September, 1955, through March, 1956. Some time after the March payment the bank mislaid the authorization, which resulted in the drafts for April and May, 1956, being returned to the insurance company with the notation "Not authorized." The bank did not notify the insured of the dishonored drafts and no further premiums were paid. The policy became lapsed and was so when the insured died on August 12, 1956. The insurance company refused to pay the policy proceeds to the beneficiaries. This action was brought on the ground that negligence of the bank in failing to honor the April and May drafts resulted in the lapse of the policy and loss of the proceeds to the children.

Defendant claims (1) that it owed no duty to the beneficiaries because there was no privity of contract with them; (2) that it was the insured's own failure to see that the premiums were paid which caused the lapse of the policy; and (3) that a "hold harmless" provision in the authorization protected it from any liability in connection with its agreement to honor the drafts.

It is often stated that privity of contract is a prerequisite to holding one liable for breach of a duty thereun-

218

der.[1] But it is also recognized that there are duties to others than the immediate parties, where from the nature of the contract, it is plainly evident to the promissor that the contract is for the benefit of third persons and that a failure to discharge his duty would adversely affect them.

■ In considering the bank's duties to the beneficiaries, it is appropriate to look to the foundations of that relationship. Between the bank and depositor it is that of debtor-creditor to the extent of the customer's balance,[2] and it is the bank's duty to pay up to that amount to anyone on the depositor's order and in conformity with his direction,[3] and this is also usually true even where the depositor authorizes another to draw on his account.[4] In any event, banks customarily do so because they are competing for business on the basis of the services they offer. It is apparent

that this was the reason that the defendant bank agreed to perform this service for the insured. Whether the bank could have refused is not material. The fact is that it did not refuse, but accepted and complied therewith for seven months, permitting the insured to assume that the premiums were being paid.

■ Under the circumstances here shown it was evident to the bank that the monthly drafts covered insurance premiums and that failure to pay them would result in lapse of the policy and loss of protection thereunder. Having accepted the responsibility, the duty to fulfill it ran both to the depositor and to her beneficiaries for whom she maintained the policy, and the bank was obliged to exercise due care in performing that duty at least until it notified the insured to the contrary. Its failure to do so renders it liable to the beneficiaries who were harmed thereby despite lack of privity between them.[5]

1. Aetna Ins. Co. v. Illinois Central R. R. Co., 365 Ill. 303, 6 N.E.2d 189, certiorari granted 301 U.S. 679, 57 S.Ct. 939, 81 L.Ed. 1338, certiorari dismissed 302 U.S. 652, 58 S.Ct. 269, 82 L.Ed. 505.

2. Robinson v. First Nat'l Bank, Fairborn, Ohio App., 140 N.E.2d 44; Williams v. American Surety Co. of N. Y., 83 Ga. App. 66, 62 S.E.2d 673; Speroff v. First Central Trust Co., 149 Ohio St. 415, 79 N.E.2d 119.

3. American Nat'l Bank of Denver v. First Nat'l Bank of Denver, 130 Colo. 557, 277 P.2d 951; Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A.1916F,

1059; 170 App.Div. 679, 156 N.Y.S. 563; Glasswell Development Co. v. Citizens Nat'l Bank of L. A., 191 Cal. 375, 216 P. 1012, 28 A.L.R. 1427.

4. Glasswell Dev. Co. v. Citizens Nat'l Bank of L. A., supra; Pierson v. Union Bank & Trust Co., 181 Ky. 749, 205 S.W. 906, 2 A.L.R. 172.

5. See Anderson v. Rexroad, 175 Kan. 676, 266 P.2d 320; see Annotation 81 A.L.R. 1271 et seq. on Right of Third Person to Enforce Contract Between Others for His Benefit, and authorities therein cited; Corbin on Contracts, p. 20.

Defendant attacks as arbitrary and unreasonable the refusal of the trial court to find that the lapse of the policy was caused by the insured's own wilful or negligent failure to pay the premiums. It is important to keep in mind that the burden of proof on that issue was upon the defendant: if reasonable minds could remain unconvinced that it was her failure to use reasonable care in regard to this business which caused the loss, the refusal of the court to find that her conduct precluded recovery must stand.[6]

On this point the defendant's contention is predicated upon the hypothesis that Nancy Gallagher must have become aware that the policy had lapsed. Although the bank concedes that it gave her no notice of its discontinuance of paying the premiums, it claims that she had notice that they were not being paid through her monthly bank statements, absent deductions and cancelled drafts; and also through notice of lapse which was mailed to her in July, 1956, by the insurance company. So far as the latter is concerned, there is no indication in the evidence that she received it. The insurance company sent it to her Laredo, Texas address, but she was residing at the time in Salt Lake City, where she remained until her death. There is,

of course, no presumption that a letter, even though mailed in regular course, was received by her when it was not addressed where she was living.[7]

After she had made the arrangements with the bank to honor the drafts and pay the premiums, it would not be unreasonable for her to repose some confidence in it and assume that the arrangement was being carried out. Admittedly it is usual for depositors to pay attention to their bank statements. Yet the court in determining the facts may not have regarded it as out of the ordinary for one to fail to make a careful audit of all checks and withdrawals from a bank account each month under the apprehension that the bank was not keeping its promise. We do not regard the evidence as to the bank statements to be such as to compel a finding that she had notice and that the proximate cause of the lapse of the policy was her negligent or wilful failure to further attend to the payment of premiums.

The "hold harmless" provision in the "Sight Draft Authorization" under which defendant claims protection reads thus:

"I understand and agree that *your compliance herewith* shall constitute a gratuity and courtesy accorded me as

6. See Martin v. Stevens, 121 Utah 484, 243 P.2d 747.

7. Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395; Cooney v. Mc-

Kinney, 25 Utah 329, 71 P. 485; Brown v. Fraternal Accident Association of America, 18 Utah 265, 55 P. 63.

your customer, and that you assume or incur no liability whatsoever in the premises, and I further agree to hold you harmless of and from any and all claims arising hereunder." (Emphasis added)

Assuming that in the absence of some consideration of public policy militating against it, one may contract to protect himself against liability for loss caused by his negligence, it is nevertheless well settled that contracts in which a party attempts to do so are subject to strict construction against him; and further, that he will be afforded no protection unless the preclusion against negligence is clearly and unequivocally stated.[8]

It will be noted that the language quoted above purports only to protect the bank from liability arising from its *compliance* with the authorization, indicating that if it did so it would "incur no liability whatsoever." The authorization was obviously signed and given to the bank for the sole purpose of getting the premiums paid. The fair deduction is that it was the understanding of both the insured and the bank that they would be paid. It is likewise not unreasonable to assume that what the bank was being protected for was the debiting of the account for the amount drawn; and that the drawer of the drafts

might draw for too much money, or too many drafts, or that some other such mistake might occur for which it did not want to be responsible. But there is no provision that it would be protected in the event of entire failure to fulfill the arrangement. If it did so, the depositor would gain very little from this supposed "service" except an illusory promise from the bank that "maybe we will and maybe we won't" pay the premiums, creating a situation of uncertainty which would hazard the loss of the policy at any time unless closely checked on by the insured. If she were to be placed in such a vulnerable position it should have been made definite and clear to her. We are not disposed to disturb the judgment of the trial court that the bank should be held responsible for its failure to fulfill the duty it had agreed to perform.

Affirmed. Costs to plaintiff (respondent).

WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that there are a number of reasons which, though one or more in isolation might not do so, in the aggregate constitute a defense to this cause. They are as follows:

8. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630; see annotation on Limiting Liability for own Negligence, 175 A.L.R. 8 et seq.

1. The assured was apprised by her monthly bank statement that the premiums were unpaid, and it was negligence to have looked at it and not to have seen this omission, or not to have looked at it at all;

2. The assured was notified of nonpayment by the insurance company when the latter addressed a letter to the former at Laredo, Texas, her residence at the time of issuance of the policy, she having a duty thereafter to notify the insurance company of any change of residence, failing which, constituted negligence;

3. The sight draft authorization represented and asserted that payment by the bank was but a courtesy, the assured specifically indemnifying against breach of such courtesy by *telling the bank* that "*you* assume or incur *no liability whatsoever in the premises,* and I further agree to *hold you harmless* of and from *any and all claims* arising hereunder";

4. There appears to be no consideration for the courtesy, it being but an accommodation, and such courtesy was neither solicited nor officiously undertaken;

5. The authorization was prepared by the insurance company, the assured's principal, and therefore must be considered as having been prepared by the assured, who presented it to the bank already prepared, requiring that any strict construction of the instrument be charged to her, not the bank, as the main opinion asserts, the bank having had nothing to do with the preparation of the unsolicited document;

6. The interpretation of the main opinion to the effect that the authorization protected only from "liability arising from *compiance*" is quite unrealistic since there could be no liability if there were full compliance with its terms; furthermore, the authorization, viewed in full context, does not lend itself reasonably to the construction placed upon it by the majority opinion;.

7. The whole scheme here allows for an insurance company to force upon a probably unwilling bank, a service unsought and unwanted, forces the latter to an administrative, bookkeeping and mailing expense never contemplated, solicited or desired, relieves the insurance company of that expense, and now, by virtue of this decision, makes the bank an absolute insurer for the payment of premiums at the expense of litigation,—all arising out of a veiled but nonetheless practical threat that nonperformance of the service will result in loss of business,—all of which is true, and all of which should be protected against by the clear and unambiguous release of any and all claims incorporated in the sight draft authorization.

It is no answer to say the bank may refuse to perform such service which its depositor requests and insists on. Any realistic business man would consider it

quite foolhardy to turn away patronage by refusing the service, and any thinking person knows that to do so would result in loss of at least a percentage of such patronage.

The judgment of the trial court should be reversed.

CALLISTER, Justice (dissenting).

I dissent for the reason that the "hold harmless" clause contained in the "Sight Draft Authorization" is valid and precludes recovery by respondent.[1]

Many jurisdictions have held similar exculpatory provisions void as against public policy, some by virtue of a statute to that effect.[2] Neither this court, nor our legislature, has expressly declared such provisions to be against the public policy of this state.[3]

In the instant case the exculpatory provision was not inserted in the document at the bank's insistence. On the contrary, the bank had no part in its drafting. Mrs. Gallagher signed it in Texas and forwarded it to the bank in Spanish Fork, Utah. Having signed the authorization, she was charged with the knowledge of its provisions.

The exculpatory clause certainly covered the bank's negligent acts. To hold otherwise would render it meaningless.[4] Furthermore, the "Sight Draft Authorization" including the "hold harmless" clause was supported by consideration. The bank agreed to perform a service over and beyond its normal obligations to a depositor.[5]

---

1. Restatement of Contracts §§ 574, 575.
2. 175 A.L.R. 8 et seq.
3. See dicta in Jankele v. Texas Co., 88 Utah 325, 54 P.2d 425.
4. 175 A.L.R. § 8, p. 18.
5. Restatement of Contracts § 75.