**C–K ENTERPRISES, INC., et al.**

v.

**DEPOSITORS TRUST COMPANY.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1981.

Decided Dec. 18, 1981.

---

Before McKUSICK, C. J., and GOD-FREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, J.

This appeal is taken from a judgment entered in Superior Court (Androscoggin County) on a jury verdict awarding compensatory and punitive damages to plaintiffs C–K Enterprises, Inc., and Christine Kyllonen for the closing of their bank accounts by defendant. The issues raised are (1) whether plaintiff Kyllonen has standing to sue; (2) whether the trial justice should have given defendant's requested instructions and (3) whether there was any credible evidence on which the presiding justice could have submitted the question of damages to the jury. We find no merit in any of defendant's arguments and deny the appeal.

For many years plaintiff Kyllonen owned two businesses in Mechanic Falls. In 1964 she opened a checking account for herself d/b/a Christie's Variety and in 1966 an account for herself d/b/a Christie's Restaurant. In 1973 Kyllonen conveyed all her interest in the two businesses to C–K Enterprises, Inc. and opened a checking account at Depositors Trust for the corporation d/b/a Christie's. Kyllonen was the person empowered to draw checks on the corporate account.

Despite the transfer of the businesses to the corporation, the two individual accounts remained active. All three accounts had an extensive history of overdrafts and returned items, and Mrs. Kyllonen often satisfied the businesses' obligations by buying back bad checks with her own funds or with cash generated by the businesses. Conflicting testimony was presented as to whether Kyllonen had been warned that the accounts would be closed if she did not manage them better.

The decision to close plaintiffs' accounts was made on Wednesday, January 21, 1976. On the morning of Friday, January 23, the accounts were closed. Tellers were told to refer anyone seeking to make deposits in

Berman, Simmons, Laskoff & Goldberg, P.A., William Robitzek (orally), and Robert A. Laskoff, Lewiston, for plaintiffs.

Locke, Campbell & Chapman, Frank G. Chapman (orally), Augusta, for defendant.

the accounts to the manager, Mr. Rioux, and checks were made out for the closing balances and mailed with closing letters to Christie's. Rioux testified that he called Christie's Restaurant on Friday morning and left word for Kyllonen to call him. When one of plaintiff's employees tried to make a deposit about noon on Friday, it was refused, and he was told by the manager to have Kyllonen call the bank. The message was not delivered until between 4:00 and 5:45 p. m. Friday, and there was conflicting testimony as to whether Kyllonen was able to reach Rioux on Friday. On Monday, January 26, Kyllonen went to the bank and spoke to him about the accounts.

The jury returned verdicts for both plaintiffs. Three thousand dollars compensatory damages and $1500 exemplary damages were awarded to C–K Enterprises, and $5000 compensatory and $1000 exemplary damages were awarded to Christine Kyllonen.

*Standing*

■ Defendant argues that plaintiff Kyllonen had no standing to sue because she had conveyed all of her interests in the two businesses to C–K Enterprises, Inc. four years before the commencement of this action. We disagree. Although the names on the accounts did not accurately reflect the business status of plaintiff, she was the depositor and signer of the checks as well as the person regarded by the bank as its customer. Damages caused by any mishandling of the accounts by the bank would necessarily have redounded to Kyllonen. As she alleged and subsequently proved, her individual business reputation and peace of mind were damaged by defendant's actions. Without doubt plaintiff Kyllonen's "definite and personal legal rights" are sufficiently at stake in this action to establish her standing. *Brown v. Manchester*, Me., 384 A.2d 449, 451 (1978); *Nichols v. City of Rockland*, Me., 324 A.2d 295, 297 (1974).

*Jury Instructions*

■■ Defendant proposed an instruction that

the relationship between a bank and its depositors is one that is voluntarily assumed by the parties; that either may arbitrarily decline to do business with the other . . . .

The Court deleted the word arbitrarily, instructing as follows:

The relationship in this case between a bank and a bank customer is a contractual relationship. . . . It is a voluntary relationship and that relationship may be terminated by either party. The bank may close out a customer's account at any time provided reasonable notice is given to the customer. The contract or the relationship does not prohibit the closing of the account by either party, the customer or by the bank, but the contract carries a requirement that a bank may close out a customer's account provided reasonable notice was given to the customer.

Defendant asserts that failure to give the instruction as requested was prejudicial because it left the jury with the impression "that the contract is binding and the bank had to observe some unstated formalities before the contract could be terminated." We disagree.

A party is not entitled to have a requested instruction given if it is misleading or confusing. *Michaud v. Steckino*, Me., 390 A.2d 524, 534 (1978); *Towle v. Aube*, Me., 310 A.2d 259, 266 (1973). The requested instruction, that either party may arbitrarily decline to do business with the other, has the potential for causing great confusion. From it the jury might infer correctly that the account could be closed for no reason. *Elliott v. Capital City State Bank*, 128 Iowa 275, 103 N.W. 777 (1905); *Chicago Marine & Fire Insurance Co. v. Stanford*, 28 Ill. 168, 81 Am.Dec. 270 (1862). The jury might also infer, however, that the means of termination may be arbitrary when in fact the Uniform Commercial Code imposes a duty of ordinary care and good faith on banks in their dealings with customers. 11 M.R.S.A. § 4–103.

As given, the charge clearly expressed terminability at will while importing the

standard of reasonable conduct. The one requisite formality was·explicitly set forth and it was unlikely that the jury would infer that more was required. Since a review of the entire charge shows that the jury was correctly informed on this issue, there was no error in the trial justice's refusal to instruct as requested. *See Michaud v. Steckino*, 390 A.2d at 534, *Towle v. Aube*, 310 A.2d at 266.

Defendant also argues that the verdict was prejudiced by the court's failure to give the following instruction:

> You are instructed that a bank only has to make a reasonable effort to notify its depositor of the closing of the checking account not actual notice under all circumstances.

Having twice stated the requirement of reasonable notice, the court explained how the jury was to make its determination in language that essentially encompassed the instruction requested by defendant:

> Now reasonable notice is such notice as to allow a customer a reasonable opportunity to protect his or her credit. . . .
>
> Now what action or actions constitute reasonable notice? You have to find as a fact that they depend on the circumstances, the efforts of the bank should be considered, what the bank did by way of giving notice or attempting to give notice, and the actions of the customer, the bank customer; whether the Plaintiff knew or when the Plaintiff knew, or when she should have known, or when the corporate Plaintiff knew, or when it should have known as to the notice.

As given, the instruction correctly states the law concerning the reasonable notice required to close a bank account. *Ambruster v. National Bank of Westfield*, 116 N.J.L. 122, 182 A. 613 (1936). Moreover, in urging the jury to consider both the bank's efforts at giving notice and when plaintiff should have known that the account was being closed, the court did not imply, as defendant contends, a requirement of actual notice. Since the requested instruction was sufficiently covered by the charge given and since defendant can show no prejudice from the court's refusal to give the instruction in the requested language, again there was no error. *Michaud v. Steckino*, 390 A.2d at 534.

*Damages*

 Defendant's final argument is that its motions for directed verdicts and for judgment notwithstanding the verdicts should have been granted because there was no credible evidence upon which the jury could have based an award of either compensatory or punitive damages. Defendant's position is without merit. It is axiomatic that a verdict should not be directed by the trial court for a defendant if different conclusions could fairly be drawn by different minds when the evidence is viewed in the light most favorable to plaintiff. *McMann v. Reliable Furniture Co.*, 153 Me. 383, 140 A.2d 736 (1958); *Howe v. Houde*, 137 Me. 119, 15 A.2d 740 (1940). The record in this case amply supports the conclusion that there were jury questions on both compensatory and punitive damages. On the issue of compensatory damages, evidence was presented showing the decline in business at both the restaurant and the variety store, the difficulties encountered by· the businesses in having to go on a cash basis with some suppliers and plaintiff Kyllonen's financial embarrassment and decline in health. Although defendant presented evidence that plaintiff was not on a cash basis for a significant length of time with some suppliers and that plaintiff had a consistent record of bouncing checks with the suppliers with whom she claimed her reputation was damaged, different conclusions could fairly be drawn from the evidence. Similarly the testimony of the bank manager, Mr. Rioux, concerning his actions in closing the accounts, raises a question for the jury as to whether his behavior was malicious or in reckless disregard of plaintiff's rights, providing a basis for punitive damages.[1] *Foss v. Maine*

---

1. Whether punitive damages are permitted by the Uniform Commercial Code or general con-

tract law in cases of wrongful dishonor and whether the entire doctrine of punitive dam-

*Turnpike Authority*, Me., 309 A.2d 339 (1973); *Pettengill v. Turo*, 159 Me. 350, 193 A.2d 367 (1963). Rioux testified that he decided to close the account on Wednesday but made no effort to contact plaintiff before actually closing it on Friday. He further testified that although he closed the account without knowing what procedures he was supposed to follow, he did know that there were probably outstanding checks that would bounce and that this would cause plaintiff embarrassment. Certainly different minds might draw different conclusions from that evidence as to whether plaintiff was entitled to punitive damages.

The entry is:

Judgments affirmed.

All concurring.

ages retains any vitality in Maine are issues which were not raised by defendant. Throughout the trial defendant challenged punitive damages only on the grounds that there was no evidence of willful, wanton or malicious conduct nor conduct in reckless disregard of the

rights of the plaintiffs. We address the issue on appeal in the same limited manner.