ARROW INDUSTRIES, INC., a Utah corporation, Plaintiff and Appellant,

v.

ZIONS FIRST NATIONAL BANK, a national association; Western Dairymen Cooperative, Inc., a Nebraska corporation; and Grant and Ruby Cooper, individually and dba Rocky Mountain Enterprises and Rocky Mountain Irrigation, a Utah corporation, Defendants and Appellees.

No. 19413.

Supreme Court of Utah.

Dec. 30, 1988.

Joseph M. Chambers, Logan, for plaintiff and appellant.

John Beckstead, Steven R. Ellinwood, Salt Lake City, for defendants and appellees.

HALL, Chief Justice:

Arrow Industries, Inc. ("Arrow") appeals the trial court's dismissal of its contract and negligence claims against Zions First National Bank ("Zions").

As payment for inventory sold, Arrow received five checks drawn by Rocky Mountain Irrigation ("Rocky Mountain") upon Zions, totalling $28,148.64. When Arrow presented the checks for payment, the account did not contain sufficient funds to pay them. Consequently, counsel for Arrow placed the checks with Zions for collection, with the agreement that they would be held for a period of thirty days. After only three days, and after having paid other checks later presented, Zions returned Arrow's checks unpaid and informed Arrow's counsel that as long as the checks were held for collection, other checks could not clear the account.

Alleging that it suffered a detriment as the result of Zions' actions, Arrow brought this suit. Arrow's initial cause of action sounded in tort. It alleged that the process of collecting checks engaged in by Zions in this instance was one that arose out of common banking custom and that Zions breached its duty and failed to exercise ordinary care by wrongfully returning the checks. However, the trial court concluded that the pleadings failed to advance a theory of negligence that would support a recovery and dismissed Arrow's cause of action.

Thereafter, Arrow was permitted to amend its cause of action and allege breach of contract on two theories: (1) breach of the contract between Zions and its depositor, Rocky Mountain, to which Arrow was a third-party beneficiary, and (2) breach of

a fiduciary duty under a contract of agency. As part of its complaint, Arrow alleged that Zions was a creditor of Rocky Mountain and that by returning the checks unpaid, Zions wrongfully enhanced its position as a secured party to the inventory for which the checks were payment.

Zions brought a second motion to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. The motion was supported by written memoranda, affidavits, answers to interrogatories, and Arrow's responsive memoranda and affidavits. Hence, the motion was appropriately treated as one for summary judgment.[1]

The trial court granted summary judgment in favor of Zions, concluding in its memorandum decision that Arrow did not stand in the relationship of a third-party beneficiary of the contract between Zions and Rocky Mountain because Arrow would only have been a beneficiary of that contract if there had been sufficient funds in the bank to pay the checks at the time they were presented. The court also concluded that there was no consideration for any promise to hold the checks for thirty days and that Zions was thus free to elect to return the checks at any time. We disagree.

■ A motion to dismiss is only appropriate where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim.[2] In reviewing an order granting a motion to dismiss, we are obliged to construe the complaint in the light most favorable to the plaintiff and to indulge all reasonable inferences in its favor.[3]

■ Similarly, when ruling on an appeal from a motion for summary judgment, we inquire whether there is any genuine issue as to any material fact and, if there is not, whether the moving party is entitled to judgment as a matter of law. In reviewing

---

1. Utah R.Civ.P. 12(b).

2. *Freegard v. First W. Nat'l Bank,* 738 P.2d 614, 616 (Utah 1987).

3. *See Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983); *Ellis v. Social Servs. Dep't of the Church of Jesus Christ of Latter-day Saints,* 615 P.2d 1250, 1252 n. 1 (Utah 1980).

the record on an appeal from summary judgment, the Court treats the statements and evidentiary materials of the appellant as if a jury would receive them as the only credible evidence and sustains a judgment only if no issues of fact which could affect the outcome can be discerned.[4] Application of these standards of review in this case prompts the conclusion that the trial court erred in dismissing Arrow's causes of action.

Arrow advances the same arguments on appeal as were presented to the trial court. Its first claim is that Zions owed it a duty in tort and that this duty was breached to Arrow's detriment when Zions prematurely returned the five checks. Arrow concedes that Uniform Commercial Code ("UCC") section 4–202, which explicitly provides that "collecting banks" must use "ordinary care," does not apply to the transaction in question since Zions was acting as a "payor bank."[5] Arrow claims, however, that Zions is subject to the general duty owed by all banks to act in good faith and exercise ordinary care in handling all banking transactions. To support this proposition, Arrow relies upon UCC section 4–103:

(1) The effect of the provisions of this chapter may be varied by agreement except *that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care* or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable.

(2) Federal Reserve regulations and operating letters, clearinghouse rules, and the like, have the effect of agreements under subsection (1), whether or not specifically assented to by all parties interested in items handled.

(3) Action or nonaction approved by this chapter or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and, in the absence of special instructions, action or nonaction consistent with clearinghouse rules and the like or with a general banking usage not disapproved by this chapter, prima facie constitutes the exercise of ordinary care.

. . . .

(5) The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence.

(Emphasis added.) In reference thereto, "good faith" is defined in section 1–201(19) as "honesty in fact in the conduct or transaction concerned." And section 4–103 provides that action or nonaction consistent with general banking usage and reasonable business standards constitutes the exercise of ordinary care.[6]

Arrow cites *First National Bank v. Brandon State Bank*[7] for the proposition that section 4–103 recognizes a duty which is owed by banks to use ordinary care in all their dealings. In that case, the court considered the issue of whether a payor bank was in violation of Florida's codification of the UCC or federal reserve regulation in failing to wire "advice of dishonor" of a presented check. Although the court determined that there was no apparent requirement that "wire advice" be sent before the payor bank's deadline, the court held:

There is a requirement that all "collecting banks" exercise ordinary care in handling items being collected. [UCC

**4.** *Zions First Nat'l Bank v. Clark Clinic Corp.,* 762 P.2d 1090, 1092 (Utah 1988).

**5.** All references to the Utah Uniform Commercial Code may be found in title 70A of Utah Code Ann. (1980). Under UCC section 4–105 a "collecting bank" is defined as "any bank handling the item for collection except the payor bank."

**6.** *Zions,* 762 P.2d at 1097–98.

**7.** 377 So.2d 990 (Fla.Dist.Ct.App.1979), *cert. denied,* 388 So.2d 1110 (1980).

§ 4–202.] But "payor banks" are expressly excluded from the definition of "collecting banks". [§ 4–105.]

That leaves only the general and vague reference in Section [4–103(1) and (5) ] to a duty owed by all banks to use ordinary care, presumably in *all their dealings.*[8] That case was then remanded to the trier of fact to determine in part whether the bank breached its duty, whether any breach was excused under the facts of the case, and whether the plaintiff's loss was a proximate result of any unexcused breach.

In another case involving the issue of a payor bank's duties and responsibilities under the UCC, the court in *Charles Ragusa & Son v. Community State Bank*[9] noted:

> We have been unable to find any ... case specifically dealing with the payment of a stale check and the aspect of good faith under [UCC § 4–404]. However, it seems obvious that although [§ 4–404] protects a bank which pays a stale check so long as it acts in "good faith", it does not eliminate the requirement of ordinary care which a bank must observe in *all its dealings.* [§ 4–103(1).][10]

This basic proposition is also supported in *Phillips Home Furnishings, Inc. v. Continental Bank:*[11]

> [We] hold that a bank cannot contractually exculpate itself from the consequences of its own negligence or lack of good faith in the performance of *any of its banking functions.* We find the public need for professional and competent banking services too great and the legitimate and justifiable reliance upon the integrity and safety of financial institutions too strong to permit a bank to contract away its liability for its failure to provide the service and protections its customers justifiably expect, that is, for its failure to exercise due care and good faith. The Bank, while acting as a bailee, was also acting in its capacity as a bank. The Bank undertook to provide the Night Depository Service from utilitarian, not altruistic motives. The service was conducive to continued growth and prosperity; and represented one of many "banking services." Although the parties could delay the initiation of the normal depositor-creditor relationship, they could not erase the relationship of bank-customer. As we have stated above, we hold that a bank, irrespective of contractual attempts at exculpation, continues to owe its customers a duty of due care and good faith.[12]

■ ■ This general principle, which we acknowledge as applicable today, that UCC section 4–103 recognizes a bank's duty to act in good faith and exercise ordinary care in all its dealings, appeals to our sense of reason and fairness and best comports with the UCC's stated purposes, policies and rules of construction.[13] Accordingly, we

---

**8.** *Id.* at 992 (emphasis added); *see also C–K Enterprises v. Depositors Trust Co.,* 438 A.2d 262, 264 (Me.1981) ("[T]he Uniform Commercial Code imposes a duty of ordinary care and good faith on banks in their dealings with customers [UCC § 4–103]."); *Reid v. Key Bank of So. Me., Inc.,* 821 F.2d 9, 15 n. 2 (1st Cir.1987) ("The use of the sweeping phrase, 'in their dealings with customers,' arguably extends the protections of 'ordinary care' ... beyond those bank transactions specifically covered in Article 4.") (quoting *C–K Enterprises,* 438 A.2d at 264).

**9.** 360 So.2d 231 (La.Ct.App.1978).

**10.** *Id.* at 234 (emphasis added).

**11.** 231 Pa.Super. 174, 331 A.2d 840 (1974), *rev'd on other grounds,* 467 Pa. 43, 354 A.2d 542 (1976) (issue of exculpatory clause held not properly before Superior Court).

**12.** 231 Pa.Super. at 183–84, 331 A.2d at 844–45 (emphasis added); *see also* Utah Code Ann. §§ 70A–1–102(3) (1980) (the obligations of good faith, diligence, reasonableness and care prescribed by the UCC may not be disclaimed by agreement), –4–103 (no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care).

**13.** Utah Code Ann. § 70A–1–102 (1980), in pertinent part, provides:

> (1) This act shall be liberally construed and applied to promote its underlying purposes and policies.
> (2) Underlying purposes and policies of this act are
> (a) to simplify, clarify and modernize the law governing commercial transactions;
> (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

conclude that Zions' claim that UCC article 4 is not applicable to this case is without merit.

Nevertheless, Zions contends that even if article 4 applies herein, it neither breached a duty to act in good faith nor failed to exercise ordinary care in the instant case. As support for this contention, Zions claims that Arrow makes "no allegation that there were ever sufficient funds in the account to pay the checks during the period of time they were held by Zions." Additionally, Zions contends that it has the legal right (and that it exercised the same) under the UCC "to elect to pay checks in any order it desires for checks presented for payment the same day." We are not persuaded.

First, the pleadings in this case clearly alleged that Zions breached its duty and failed to exercise ordinary care by wrongfully returning the checks in question while allowing other checks to be paid. This claim, together with others alleged and the principles noted above, was sufficient to preclude dismissal under rule 12(b)(6).[14] Additionally, the record supports the contention that there were sufficient funds in the account to pay at least some of the checks in question. Indeed, Rocky Mountain's account statement indicates that during the time Arrow's checks were held, over $53,000 was deposited into Rocky Mountain's account and checks worth over $77,000 were paid. And on the day that Zions agreed to hold Arrow's checks for payment, Rocky Mountain apparently had between $5,338 and $17,203 in its account—amounts sufficient to pay at least some of the checks. Also, on the day Arrow's checks were returned unpaid, and continuing for several days thereafter, additional sums in excess of $43,000 were deposited into Rocky Mountain's account. Thus, any pretense that Rocky Mountain's account remained void of sufficient funds is without merit.

Second, as to Zions' claim that section 4-303(2) allowed it to choose the order of payment for checks presented on the same day, we again reiterate that the UCC recognizes a bank's duty to act in good faith and exercise ordinary care in *all* of its dealings. We also emphasize that section 4-103 allows the provisions of article 4, including those of section 4-303(2), to be varied by agreement. By agreeing to pay Arrow's checks whenever funds entered Rocky Mountain's account, Zions arguably permitted Arrow to reasonably · assume that Zions would act in good faith and exercise ordinary care and afford the subject checks first priority.[15] Arrow's contentions that such an agreement was made and that Zions breached its duty refute Zions' claim and accordingly preclude dismissal in this case.

In passing, we note the Eighth Circuit Court's decision in *W.B. Farms v. Fremont National Bank & Trust Co.*[16] Therein, the plaintiff brought an action for breach of an oral agreement it alleged was made with Fremont National Bank. As in this case, the plaintiff contended that the bank agreed to pay a check made payable to the plaintiff whenever sufficient funds came into the drawer's account. After holding that the oral agreement was valid and enforceable as a matter of law, the court addressed the bank's contention that the agreement lacked specificity as to whether the bank was required to pay the subject check before paying other checks. The court stated:

(c) to make uniform the law among the various jurisdictions.
(3) The effect of provisions of this act may be varied by agreement, except as otherwise provided in this act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this act may not be disclaimed by agreement but the parties may be [sic] agreement determine the standards by which the performance of such obligations is to be measured of [sic] such standards are not manifestly unreasonable.

14. *See* Utah R.Civ.P. 12(b); *supra* notes 2–3.

15. *Cf. Walker Bank & Trust Co. v. First Security Corp.,* 9 Utah 2d 215, 218, 341 P.2d 944, 946 (1959) (bank's agreement with insured caused latter to assume bank would fulfill its obligations thereunder).

16. 756 F.2d 663 (8th Cir.1985).

[I]t is true that the agreement did not state the order in which the W.B. Farms check would be paid relative to other checks presented against the account. Fremont argues that absent an agreement as to the order of payment, it was entitled to pay the check in any order it deemed appropriate, as provided in [section 4–303(2) ]. Even assuming that Fremont had no duty to pay the check in any particular order, this still would not under the present facts relieve Fremont from its duty to pay the check. On November 15, 1979, the drawer's account had a balance of $42,841.07 in credible funds after all the other checks presented for payment had been paid. Thus, on this day, the bank had sufficient credible funds to pay the check even if it chose to pay the check last of all the checks presented. The fact that on the next day, November 16, the bank deducted $16,087 from the drawer's account pursuant to a security agreement in no way alters the fact that on the previous day sufficient credible funds were available to pay the check.[17]

In the instant case, the issue is not before us and we accordingly do not decide whether absent an agreement specifically addressing the order of payment in such instances, a bank is entitled to pay a check in any order it deems appropriate. Nevertheless, the requirement that a bank act in good faith and exercise ordinary care still applies.[18]

Finally, as previously indicated, Arrow pleaded breach of contract. In granting Zions' motion for summary judgment on this claim, the court also erred.

■ Prior decisions by this Court recognize that Arrow's third-party beneficiary contract may be an appropriate theory for recovery.[19] And as noted above, Rocky Mountain's account contained sufficient funds on the day in question to pay part or all of the subject checks and allow Arrow to be considered a third-party beneficiary, at least for purposes of summary judgment.[20]

■ In regard to the existence of an alleged contractual agreement between the parties herein, Zions treated Arrow as its customer and undertook to provide the service in the instant case from utilitarian, not altruistic, motives.[21] Certainly as representative of many similar and widespread banking services, Zions' agreement to pay the checks whenever sufficient funds came into Rocky Mountain's account was conducive to continued growth and prosperity.[22] Further, since banks compete for business on the basis of the services they offer,[23] the good will flowing from such business practices, not to mention additional benefits a bank potentially obtains from the use of the drawer's deposited funds in such instances, is consideration enough to satisfy contractual requirements. These facts, together with the principle that a bank must act in good faith and exercise ordinary care in all of its dealings,[24] support our conclusion that Zions' motions were inappropriately granted in this case.

---

**17.** *Id.* at 668.

**18.** Although the court in *W.B. Farms* elsewhere indicated that drawee banks are generally not liable to payees on checks, at least one exception was noted in that case, and given our holding concerning a bank's duty to act in good faith and exercise ordinary care in *all* its dealings, another exception is recognized.

**19.** *See generally Livingston Indus., Inc. v. Walker Bank & Trust Co.*, 565 P.2d 1117, 1118 (Utah 1977); *Walker Bank & Trust Co.*, 9 Utah 2d at 217–18, 341 P.2d at 945–46. *Cf. Wasatch Bank v. Surety Ins. Co. of Cal.*, 703 P.2d 298, 300 (Utah 1985) ("Whether a third party is a beneficiary of a contract is determined by the intent of the parties to the contract as evidenced by the contract itself and the surrounding facts and circumstances." (Footnote omitted.)).

**20.** *See supra* note 4 and accompanying text.

**21.** *See Phillips Home Furnishings, Inc.*, 231 Pa. Super. at 183–84, 331 A.2d at 844–45.

**22.** *See id.* at 184, 332 A.2d at 844–45.

**23.** *Walker Bank & Trust Co.*, 9 Utah 2d at 218, 341 P.2d at 946.

**24.** *See supra* notes 5–13 and accompanying text; *see also* Utah Code Ann. § 70A–1–203 (1980) ("Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement.").

Due to our decision herein, we need not reach the parties' other arguments on appeal. The orders granting summary judgment and Zions' motion to dismiss are vacated, and the case is remanded for proceedings consistent with this opinion.

HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice: (concurring in the result).

I agree that this case should be remanded to the trial court because there were adequate allegations in the complaints to warrant further proceedings, under either tort or contract rubric, that could lead to the recovery of the damages spelled out in section 70A–4–103 of the Commercial Code. *See* Utah Code Ann. § 70A–4–103 (1981); U.C.C. § 4–103 (1978). However, I would make it clear that the question of whether the bank failed to act in good faith is quite a different issue than whether it failed to exercise ordinary care.

Section 70A–4–103 governs the remedies available in this case as a result of either a failure to exercise ordinary care or actions taken in bad faith. Section 70A–4–103(5) permits the collection of consequential (but not punitive) damages when "bad faith" is shown, but when nothing more is proven than a "failure to exercise ordinary care," one may recover only "the amount of the item reduced by an amount which could not have been realized by the use of ordinary care." [1] Utah Code Ann. § 70A–4–103(5) (1981). The concepts of "good faith" and its opposite, "bad faith," as well as that of "ordinary care," should not be casually smeared together under the rubric of "good faith and ordinary care," as the majority appears to do at places in its opinion. This sort of casual use of terminology invites conceptual misunderstandings by the Bar, trial courts, and juries. In articulating the law, we should do so with some analytical precision. That is one of our

primary obligations as an appellate court. *See Johnson v. Rogers*, 763 P.2d 771, 785 (Utah 1988) (Zimmerman, J., concurring in part, joined by Hall, C.J., Howe, A.C.J., and Stewart, J.).

---

1. Because the damages specified in section 70A–4–103(5) are specially tailored for UCC violations and are more limited than what might be available at common law, the result of this statutory tailoring of damages is to make the contract or tort designation of the cause of action rather academic. *Cf. Beck v. Farmers' Ins. Exch.*, 701 P.2d 795, 801–02 (Utah 1985) (comparing range of damages available in tort and contract).