616 So.2d 1168 (1993)
FIRST UNION NATIONAL BANK, OF FLORIDA, Appellant,
v.
FIRST FLORIDA BANK, N.A., Appellee.
No. 91-04108.
District Court of Appeal of Florida, Second District.
April 16, 1993.
*1169 A. Christopher Kasten of Allen, Dell, Frank & Trinkle, Tampa, for appellant.
Robert L. McDonald, Jr., of Cramer, Haber, McDonald & LeVine, P.A., Tampa, for appellee.
ALTENBERND, Judge.
First Union National Bank (Union Bank) appeals a monetary judgment in favor of First Florida Bank, N.A. (First Florida). The lawsuit was filed to determine whether the payor bank, First Florida, or the presenting bank, Union Bank, should be responsible for a dishonored check. We adopt the rule, well-established in other jurisdictions, that a notice of dishonor does not relieve a payor bank of responsibility for a check unless the notice is given prior to the statutory midnight deadline. Accordingly, we reverse the judgment and remand for entry of a judgment in favor of Union Bank.
Victor Elias had a bank account with First Florida. On August 13, 1986, he wrote a $10,000 check payable to National Computer Consultants, Inc. National Computer endorsed the check and deposited the check in its account with Union Bank. Union Bank posted the check to National Computer's account on Thursday, August 14.
Union Bank presented this check to First Florida on the following day at the local clearinghouse. At the clearinghouse, Union Bank was credited $10,000 and First Florida was debited $10,000. The clearinghouse forwarded the check to First Florida.
On August 14, Mr. Elias gave a verbal stop-payment order to First Florida. Under statutory provisions discussed later in this opinion, First Florida had until midnight Monday, August 18, to notify Union Bank of its intention to dishonor this check. As a result, First Florida took steps on Monday, August 18, to return the check to Union Bank via the clearinghouse. The check was returned to the clearinghouse on either August 18 or August 19. Unfortunately, First Florida misrouted the check when it returned the item to the clearinghouse by addressing it to the wrong bank. That bank received the misrouted check and returned it to First Florida through the clearinghouse on August 20. First Florida did not return the check to the clearinghouse for Union Bank until August 21.
In addition to returning the check, First Florida attempted to give Union Bank notice of dishonor. In August 1986, First Florida was a member of a service offered by Security Pacific to give notice of dishonor on checks over $2,500. Security Pacific provided notice through a computer system to banks participating in its service. It telephonically informed nonmember banks of dishonored checks. Union Bank was not a member of the Security Pacific system. First Florida did not request Security Pacific to give notice of dishonor to Union Bank until 5:54 p.m. on August 18, 1986. Security Pacific gave that notice by telephone at 11:40 a.m. on August 19, 1986.
In the trial court, First Florida sued Union Bank for reimbursement of this check. Reimbursement was requested because the debits and credits at the clearinghouse had left responsibility for this check with First Florida.[1] Union Bank argued that First Florida was responsible for this check because First Florida had not given timely notice of dishonor by telephone and the check was not timely returned by First Florida to Union Bank. The trial court determined that sections 673.508 and 674.302, Florida Statutes (1985), should be controlled by a "rule of reasonableness." It decided that First Florida's efforts to provide telephonic notice had been reasonable and ordered Union Bank to reimburse First Florida $10,000, plus interest and costs. We conclude that the trial court erred by adopting a rule of reasonableness.
In this case, the parties do not argue that the outcome is controlled by either federal reserve regulations or by the local clearinghouse rules. See § 674.103, Fla. Stat. *1170 (1985). Thus, we are called upon to apply sections 674.301 and 674.302, Florida Statutes (1985), in context with other portions of the Uniform Commercial Code. Those statutes are complex, but generally make a payor bank accountable to a presenting bank if a check is not returned or notice of dishonor is not provided before the "midnight deadline." In this case, First Florida is the payor bank and Union Bank is the presenting bank.[2] It is undisputed that the midnight deadline in this case, due to a weekend, expired at midnight on Monday, August 18, 1986. § 674.104(h), Fla. Stat. (1985).
By the midnight deadline, First Florida had delivered the check to the clearinghouse, but had routed this item to the wrong bank. It had notified Security Pacific of its intention to dishonor the check, but Security Pacific had not notified Union Bank. These efforts were insufficient to negate the payor bank's responsibility for the check.
The payor bank must bear the responsibility of its error in misrouting this item. Section 674.301(4)(a) provides that an item received through a clearinghouse is returned "when it is delivered to the presenting or last collecting bank or to the clearinghouse or is sent or delivered in accordance with its rules." First Florida argues that it returned the check to the clearinghouse, and that its erroneous instructions to deliver the check to the wrong bank are irrelevant. The trial court rejected this argument and we agree with the trial court. The applicable rules and regulations of the Clearinghouse Association of Florida required a return item to be enclosed in an envelope indicating the identity of the "first endorsing member." Union Bank was the first endorsing member. By placing the check in an envelope to another bank, First Florida did not satisfy the rules of the local clearinghouse. The purposes of these statutes can be fulfilled only if they are interpreted to require delivery to the clearinghouse in a manner reasonably designed to result in an item's return to the presenting or last collecting bank. See § 671.102, Fla. Stat. (1985). In light of the substantial violation of the procedures established by the local clearinghouse, First Florida did not effectively return the item by the midnight deadline.
First Florida's telephonic notification was also deficient because Union Bank did not receive it prior to the midnight deadline. First Florida argues that it provided notice of dishonor when it notified Security Pacific. We recognize that notice of dishonor may be given in any reasonable manner. Section 673.508, Fla. Stat. (1985). Nevertheless, Security Pacific was clearly the agent of First Florida, not Union Bank. Union Bank was not a member of the Security Pacific system of notification. Thus, Union Bank did not receive oral notice of dishonor until it received the telephone call on Tuesday, after the midnight deadline.
The trial court acknowledged that First Florida had not fully satisfied these notice requirements prior to the midnight deadline, but was convinced that such noncompliance should not automatically place responsibility on First Florida. First Florida persuasively argued that the telephone call on Tuesday morning had a practical effect similar to an actual return of the check to the clearinghouse on the preceding day. Moreover, there was evidence that funds were disbursed from the National Computer account at Union Bank prior to the expiration of the normal hold period. First Florida maintains that the monetary problem for the two banks could have been avoided if Union Bank had utilized different procedures. The trial court concluded that the midnight deadline, under these circumstances, did not create a rule of strict liability but rather a rule requiring reasonable compliance. It concluded that First Florida had attempted reasonable compliance with the requirements for telephonic *1171 notification and that the loss should be borne by Union Bank.
No Florida court has ever expressly held that the midnight deadline is a bright line rule that places responsibility for such a loss on the payor bank. In First National Bank of Fla. v. Brandon State Bank, 377 So.2d 990 (Fla. 2d DCA 1979), cert. denied, 388 So.2d 1110 (Fla. 1980), this court held that the payor bank could revoke a provisional settlement of a check by either a timely notice of dishonor or a timely return of the item. In that case, the item was timely returned to the federal reserve but the notice of dishonor was not timely given. We held that the timely return of the check allowed the payor bank to avoid responsibility for the check. We at least implied that the payor bank would have had responsibility if neither option had been timely satisfied. See also Capital City First Nat'l Bank v. Lewis State Bank, 341 So.2d 1025 (Fla. 1st DCA 1977), cert. denied, 357 So.2d 186 (Fla. 1978).
In other states, it is well-established that sections 4-301 and 4-302 of the Uniform Commercial Code create a statutory doctrine of strict accountability by the payor bank to the presenting bank if notice is not accomplished within the midnight deadline. Los Angeles Nat'l Bank v. Bank of Canton of California, 229 Cal. App.3d 1267, 280 Cal. Rptr. 831 (1991); First State Bank of Sherwood v. Twin City Bank of North Little Rock, 290 Ark. 399, 720 S.W.2d 295 (1986); Northwestern Nat'l Insurance Co. v. Midland Nat'l Bank, 96 Wis.2d 155, 292 N.W.2d 591 (1980). See B. Clark, The Law of Bank Deposits, Collections and Credit Cards para. 5.02[1] (3d ed. 1990). Under this doctrine, the payor bank is liable to the presenting bank for the full face amount of the check absent a successful defense. This bright line test has been adopted under the rationale that the banking industry will better function with a rule establishing across-the-board certainty rather than case-by-case equity. We see no reason to depart from this application of the Uniform Commercial Code.
Because First Florida presented no evidence in the trial court which might justify another basis for recovery from Union Bank, we reverse the judgment with instructions to enter judgment in favor of Union Bank.
Reversed and remanded.
PARKER, A.C.J., and BLUE, J., concur.
NOTES
[1] The funds which were posted to National Computer's account at Union Bank had been withdrawn before the check was returned to Union Bank. Neither Mr. Elias nor National Computer Consultants is an active participant in this appeal. This appeal does not resolve any liability these parties may have to one bank or the other.
[2] Some treatises would describe First Florida as the "drawee bank." B. Clark, The Law of Bank Deposits, Collections and Credit Cards para. 5.02[1] (3d ed. 1990). Union Bank is also the "depositary bank" and the "collecting bank" under the Uniform Commercial Code. See § 674.105, Fla. Stat. (1985). We describe Union Bank as the presenting bank for the purposes of this opinion. See § 674.301, Fla. Stat. (1985).