Kathleen Kelley, individuals; William B. Barnard, trustee of William B. Barnard Trust; William S. and Elizabeth A. Wruck, individuals; and William J. and Geraldine L. Enloe, individuals, Plaintiffs and Appellants,

v.

SUMMIT COUNTY, Glen G. Thompson, County Treasurer; Barbara J. Kressor, County Assessor; and Utah State Tax Commission, Defendants and Appellees.

No. 960087.

Supreme Court of Utah.

March 7, 1997.

Bruce C. and Regen DENNIS, individuals; David J. Dunn, trustee of Dunn Family Trust; Michael P. and Frances Grossman, individuals; James N. and Patricia E. Hanna, individuals; Philip Kay, trustee of Philip Kay as trustee for trust dated August 1, 1976; John D. and Charlotte Saydah, individuals; R. Winslow White and Deborah Fritsche, individuals; John F. Shea, trustee of John F. Shea Family Trust; Thomas J. and

Richard G. Wilkins, David J. Crapo, Pamela B. Hunsaker, Salt Lake City, for plaintiffs and appellants.

Jan Graham, Atty. Gen., John C. McCarrey, Kelly W. Wright, Asst. Attys. Gen., Bill Thomas Peters, Salt Lake City, for defendants and appellees.

RUSSON, Justice:

## I. INTRODUCTION

Plaintiffs appeal a grant of summary judgment in favor of Summit County and the Utah State Tax Commission (collectively, the "Taxing Authorities") by the Third Judicial District Court for Summit County. The court held that neither section 59–2–102(22) nor section 59–2–103(2) of the Utah Code violates Utah Constitution article III, Second. We affirm.

## II. BACKGROUND

The facts of this case are not in dispute. Plaintiffs are residents of various states other than the state of Utah. Plaintiffs own residential property in Utah which they use for vacation and recreational purposes. Plaintiffs do not use these properties as primary residences. Because they do not use their residential properties as primary residences, the Taxing Authorities determined that plaintiffs do not qualify for the residential property tax exemption provided by section 59–2–103(2). This exemption is available only for residential property used as a primary residence. Utah Code Ann. § 59–2–102(22). As a result, plaintiffs paid property taxes based upon 100% of the fair market value of their residential properties, instead of 55% of the fair market value as provided by the tax exemption.

Plaintiffs brought suit in the district court against the Taxing Authorities, alleging that the tax exemption violates article III, Second of the Utah Constitution. They also sought reimbursement of the property taxes that they allegedly overpaid. Cross-motions for summary judgment were filed, and the trial court granted summary judgment in favor of the Taxing Authorities. Plaintiffs appealed to this court.

On appeal, plaintiffs argue that the tax exemption impermissibly discriminates on the basis of residency. Plaintiffs claim that because their residential properties within Utah are being taxed at 100% of fair market value, while residential properties of residents of the state of Utah are being taxed at only 55% of fair market value, plaintiffs' lands are being "taxed at a higher rate than the lands belonging to residents" in violation of article III, Second. Plaintiffs argue that the 45% tax exemption should extend to *all* residential properties, whether or not they are used as primary residences. Plaintiffs further argue that because it was the intention of the Utah legislature to give a tax break to Utah families struggling to maintain a "roof over their heads," it must have been the unstated intention of the legislature to deny nonresidents the benefits of this same exemption.

The Taxing Authorities respond that the exemption does not discriminate on the basis of residency and does not violate article III, Second. They argue that the tax exemption is not based on a *residency* requirement, but rather on a *use* requirement (i.e., that the residential property in question be used as a "primary residence"). Further, the Taxing Authorities argue that the legislature was acting within the authority granted it by article XIII, section 2(8) of the Utah Constitution when it defined the term "residential property" as property used as a "primary residence."

## III. STANDARD OF REVIEW

■ There is no dispute in this case as to any material fact. Following the trial court's grant of summary judgment, the issue on appeal is whether the Taxing Authorities were entitled to judgment as a matter of law. *Ross v. Schackel*, 920 P.2d 1159, 1161 (Utah 1996); *Arrow Indus., Inc. v. Zions First Nat'l Bank*, 767 P.2d 935, 936 (Utah 1988).

We give no deference to the trial court's conclusions of law and review them for correctness. *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989).

## IV.  ANALYSIS

■■■ The central issue in this case is whether the property tax exemption in sections 59–2–102(22) and 59–2–103(2) of the Utah Code violates article III, Second of the Utah Constitution.[1]  We note at the outset the heavy burden placed on a party challenging the constitutionality of a statute.  When such a challenge is made, the statute "is presumed valid, and we resolve any reasonable doubts in favor of constitutionality." *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 920 (Utah 1993).  With this standard in mind, we proceed to evaluate the arguments in this case.

Article III, Second of the Utah Constitution requires equal taxation of the "lands" of both residents and nonresidents of the state of Utah. It states:

> The lands belonging to citizens of the United States, residing without this State shall never be taxed at a higher rate than the lands belonging to residents of this State. . . .

Article XIII, section 2(8) of the Utah Constitution gives the Utah legislature power to grant a limited property tax exemption to owners of "residential property as defined by law." It states:

> The Legislature may provide by law for the exemption from taxation: of not to exceed 45% of the fair market value of residential property as defined by law. . . .

Pursuant to the authority granted it in article XIII, section 2(8), the Utah legislature created the tax exemption in question by enacting section 59–2–103(2) of the Utah Code, which states in relevant part:

> [T]he fair market value of residential property shall be reduced by 45%, representing a residential exemption allowed under Utah Constitution Article XIII, Section 2, Utah Constitution.

Pursuant to article XIII, section 2(8), the legislature defined "residential property" as "any property used for residential purposes as a primary residence."  Utah Code Ann. § 59–2–102(22).

Plaintiffs argue that because they are nonresidents of Utah and have primary residences in other states, they cannot have primary residences in Utah and thus can never qualify for the property tax exemption in section 59–2–103(2) of the Utah Code. Therefore, they argue, their properties are taxed "at a higher rate than" residential properties "belonging to residents" of Utah, in violation of article III, Second of the Utah Constitution.

However, the tax exemption does not discriminate on the basis of residency, as plaintiffs allege.  Section 59–2–102(22) of the Utah Code defines "residential property" as property "used . . . as a primary residence." The crucial qualification for the exemption is the use to which the property is put, not the residency of the owner.  A resident of Utah who owns residential property in Utah but does not *use* that property as a primary residence is taxed in the same manner as a nonresident who likewise owns residential property that he does not use as a primary residence.  Such properties are valued at 100% of fair market value for purposes of calculating the property taxes owed.  The tax exemption treats resident and nonresident taxpayers alike.  Likewise, the Taxing Authorities point out that an individual, whether resident or nonresident, who owns residential property in Utah and rents it to someone who *uses* the property as a primary residence qualifies for the exemption.  Both the resident owner and the nonresident owner can take advantage of the exemption as long as the property is being *used* as a primary residence by someone.

---

1.  Plaintiffs also argue that the Utah legislature exceeded its constitutional authority, granted by article XIII, section 2(8) of the Utah Constitution, by defining "residential property" so as to offend article III, Second of the Utah Constitution. However, in making this argument, plaintiffs are essentially arguing the central issue again—i.e., the tax exemption violates article III, Second of the Utah Constitution—only in a slightly different way.  Therefore, we need not address this argument separately.

Plaintiffs respond that since any benefit conferred by the property tax exemption upon a nonresident landlord would be passed on to the renters in the form of lower rents, the nonresident owner would still not see the benefits of the exemption. However, we know of nothing that requires a nonresident (or resident, for that matter) landlord to pass on any economic benefits enjoyed by him to his renters. More importantly, however, plaintiffs do not state the obvious corollary, which is that even if their argument were correct, it would apply equally to nonresident and resident landlords and, thus, equal taxation would still be achieved. Therefore, both resident and nonresident owners of residential property are treated equally. If anything, a Utah resident who owns residential property that is not used as a primary residence will pay additional property taxes to the State of Utah because the resident not only pays a tax on his vacation home but must also pay an additional tax on his primary residence.

Plaintiffs rely upon two cases that they assert mandate our acceptance of their position. Plaintiffs' reliance on these cases, however, is misplaced. In *Baker v. Matheson*, 607 P.2d 233 (Utah 1979), the appellants leveled sixteen constitutional challenges, including one based on article III, Second, against a statute that provided for "a refund to certain renters and homeowners residing in the State of Utah of funds from the State's general fund." *Id.* at 235. This court upheld the constitutionality of the statute in all respects. The court did make one brief statement regarding the application of article III, Second to the tax measure. We stated, "We also hold that since the [statute] is not a taxing measure, it is not in violation of Article III, Second, which prohibits the lands of nonresidents from being taxed at higher rates than the lands of residents." *Id.* at 241. Plaintiffs in the case before us interpret this statement as saying that "had the scheme under analysis been 'a taxing measure'—it *would* have violated 'Article III, Second.'" Plaintiffs, however, read too much into the statement. We held only that

article III, Second did not apply to the statute in question. We did not reach the question of whether the statute would have violated article III, Second had it been a taxing measure.

In *Opinion of Judges*, 81 S.D. 629, 140 N.W.2d 34 (1966), the Supreme Court of South Dakota examined a legislative proposal to "reduce taxes for each individual taxpayer" in South Dakota. *Id.* 140 N.W.2d at 35. The South Dakota legislature defined the term "individual taxpayer" as "only those *taxpayers who reside in the State of South Dakota* and own an interest in real or personal property therein." *Id.* at 34 (emphasis added). The court held that the definition of "individual taxpayer" was "discrimination ... based solely upon residence" and therefore violated the Privileges and Immunities provisions of the United States Constitution. *Id.* at 35–36; *see also* U.S. Const. art. IV, § 2; U.S. Const. amend. XIV, § 1. In dictum, the court implied that the definition of "individual taxpayer" might also violate a provision in the South Dakota Constitution essentially identical to article III, Second of the Utah Constitution.[2] 140 N.W.2d at 36. However, the court's holding was based upon the United States Constitution, not upon the Constitution of South Dakota. *Id.*

In any event, the South Dakota tax measure was vastly different from the one in the case before us. The South Dakota legislature defined "individual taxpayer" to include all property-owning residents and to *exclude all nonresidents*. Qualification for the tax relief was based explicitly on residency, not on property use, and there was no possibility that a nonresident could qualify. The Utah legislature, on the other hand, defines "residential property" to include *all* owners of property *used* as a primary residence, irrespective of the residency status of the owner. Qualification for the Utah tax exemption is based explicitly on property use, not on the residency of the owner, and both nonresident and resident owners can qualify. While the South Dakota provision may have been "dis-

---

**2.** Article XXII, Second of the South Dakota Constitution provides, in relevant part, "[L]ands belonging to citizens of the United States residing without the said state shall never be taxed at a higher rate than the lands belonging to residents of this state...."

crimination ... based solely upon residence," the Utah provision clearly is not.

Article XIII, section 2(8) of the Utah Constitution gives the legislature the authority to exempt "residential property as defined by law" partially from taxation. The legislature was within that authority when it defined "residential property" as that property *used* as a primary residence. Certainly, it would have been unconstitutional had the legislature given *every* Utah resident a 45% tax break on *all* residential properties owned by such residents and then denied *any* such tax break to nonresidents. However, that is not this case. The tax exemption found in sections 59–2–102(22) and 59–2–103(2) of the Utah Code applies equally to both residents and nonresidents. Similarly situated residents and nonresidents are treated the same for property tax purposes. This is what article III, Second requires, and thus, the tax exemption is constitutional.

## V. CONCLUSION

On the basis of the foregoing, we affirm the district court's grant of summary judgment in favor of the Taxing Authorities.

ZIMMERMAN, C.J., HOWE and DURHAM, JJ., and Judge TAYLOR concur in Justice RUSSON's opinion.

Having disqualified himself, STEWART, Associate C.J., does not participate herein; STANTON M. TAYLOR, District Judge, sat.